UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BELINDA T. SWANSON**, | Case No. |
| Plaintiff, | Judge |
| v. | **COMPLAINT FOR DAMAGES** |
| **NATIONSTAR MORTGAGE, LLC d/b/a RUSHMORE SERVICING,** | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Belinda T. Swanson, through counsel, for her *Complaint for Damages* against Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Belinda T. Swanson ("Swanson" or "Plaintiff") is the owner of residential real property, located at and commonly known as 7344 Yorktown Road, Frankfort, IL 60423 (the "Home").

2. Swanson currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

3. Swanson executed a promissory note (the "Note") as well as a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

4. Defendant Nationstar Mortgage, LLC d/b/a Rushmore Servicing ("Rushmore" or "Defendant") is a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 8950 Cypress Waters Boulevard, Coppell, TX 75019-4620.

5. Rushmore is the servicer of the Loan and has acted in such capacity at all times relevant to the allegations in this Complaint.

1

6. Rushmore services the Loan on behalf of the owner and/or assignee of the Loan, non-Party U.S. Bank, National Association, not in its individual capacity, but solely as trustee for the RMTP Trust, Series 2019-C.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

8. This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

9. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

10. This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* ("Regulation X").

11. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13. Swanson asserts claims for relief against Rushmore for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

14. Rushmore is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

15. The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

16. The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z)

17. Rushmore is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

18. The Loan is secured by the Home which is Swanson's principal residence. 12 C.F.R. § 1024.30(c)(2).

19. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

20. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

21. Swanson has a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

3

22. Swanson also asserts claims against Rushmore for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, which entitles Swanson to recover actual damages, attorneys' fees and costs, and punitive damages.

**FACTUAL BACKGROUND**

23. Swanson suffered from financial hardships and became delinquent on her obligation under the Loan.

24. On or about December 24, 2018, foreclosure proceedings were initiated against Swanson in the Chancery Court for the 12th Judicial Circuit Court of Illinois, Case No. 2018CH002061 (the "Foreclosure").

25. Swanson submitted a loss mitigation application to Rushmore (the "Application") and Rushmore received the Application on or before November 13, 2023.

26. Rushmore sent correspondence dated December 7, 2023 acknowledging that the Application was complete as of December 3, 2023 at the latest.

27. Prior to submitting the Application, Swanson had not submitted a complete loss mitigation application to Rushmore, nor had Rushmore reviewed any such application.

28. At the time Swanson submitted the Application, there was no foreclosure sale of the Home scheduled.

29. Rushmore generated and sent correspondence dated January 3, 2024, to Swanson stating that Rushmore had reviewed the Application, but that Swanson was denied for a "Special Servicing Modification" because Rushmore was "unable to approve [Swanson] for this solution because [Rushmore is] unable to create an affordable payment within the requirements of the program" (the "Denial"). *See*, a copy of the Denial, attached as **Exhibit 1**.

30. The Denial further stated that Swanson would have "14 calendar days from the date of the [Denial]" to submit an appeal of the denial. *See*, Exhibit 1.

31. Swanson and her counsel did not receive a copy of the Denial until January 13, 2024.

32. Prior to receiving the Denial, a representative of Rushmore spoke with Swanson, *despite being aware that Swanson was represented by counsel*, to inform her verbally of the Denial.

33. On January 16, 2024, Swanson, through counsel, spoke with a representative of Rushmore, specifically a Home Solution Senior Associate identified as Zachary, seeking to extend the appeal deadline in the Denial due to the delay in delivery of the same.

34. Rushmore agreed to extend the deadline for which Swanson to submit her appeal until January 27, 2024 and Swanson, through counsel, sent email correspondence to Rushmore confirming the same on January 16, 2024.

35. On or about January 24, 2024, Swanson, through counsel sent correspondence to Rushmore captioned "Appeal of Denial of Loss Mitigation Option pursuant to 12 C.F.R. §1024.41(h) and 12 U.S.C §2605(k)(1)(C); Request for information pursuant to 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1)(E) and/or qualified written request pursuant to 12 U.S.C. § 2605(e)" (the "Appeal"). *See*, a copy of the Appeal, along with confirmation of facsimile transmission, attached as **Exhibit 2**.

36. Swanson, through counsel, sent the appeal to Rushmore via facsimile transmission to 469.464.0308, via email to Attorney Greg Elsnic, the attorney prosecuting the foreclosure related to the Loan ("Foreclosure Counsel"), as well as via Certified Mail [Tracking No. 9514 7066 2111 4024 4956 63] to the address designated by Rushmore for receipt of

requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address"). *See*, Exhibit 2.

37. Rushmore received the Appeal via facsimile transmission on or before January 24, 2024, and via Certified Mail at the Designated Address on or before January 30, 2024.

38. Through the Appeal, Swanson requested that Rushmore perform an independent evaluation of the Application and advise Swanson within thirty (30) days whether Rushmore would offer a loss mitigation option based upon the Appeal. *See*, Exhibit 2.

39. Through the Appeal, Swanson also requested information related to the Loan, including:

    a. The terms of the modification that Rushmore claimed were not affordable;

    b. An updated payoff statement for the Loan;

    c. The past two (2) escrow analyses for the Loan; and,

    d. A copy of the property valuation that was utilized during Rushmore's review of the Application.

*See*, Exhibit 2.

40. Rushmore claims to have sent correspondence to Swanson dated January 31, 2024 acknowledging receipt of the Appeal on January 30, 2024.

41. Rushmore claims to have sent a response to the Appeal dated February 23, 2024 (the "First Appeal Response"), but neither Swanson nor her counsel received a copy of such correspondence until *June 4, 2024*, when it was provided to Swanson's counsel by Foreclosure Counsel. *See*, a copy of the First Appeal Response, without enclosures, attached as **Exhibit 3**.

42. Rushmore subsequently claimed to have sent correspondence dated March 20, 2024, in response to the requests for information contained in the Appeal (the "Second Appeal

6

Response"), but again, neither Swanson nor her counsel received a copy of such correspondence until *May 17, 2024*, when it was provided to Swanson's counsel by Foreclosure Counsel. See a copy of the Second Appeal Response, without enclosures, attached as **Exhibit 4**.

43. Rushmore sent correspondence dated March 21, 2024, in response to the request contained in the Appeal for the valuation of the Home that was utilized in the review of the Application (the "Third Appeal Response"). See a copy of the Third Appeal Response, without enclosures, attached as **Exhibit 5**.

44. On or about June 25, 2024, Swanson, through counsel, sent correspondence to Rushmore via facsimile transmission to 469.464.0308 and via Certified Mail to the Designated Address, captioned:

> Notice of Error: 12 C.F.R. § 1024.35(b)(11) – Any other error relating to the servicing of a borrower's mortgage loan
> Request for Information Pursuant to 12 C.F.R. § 1024.36(a)

*See*, a copy of such correspondence (the "NOE"), without enclosures, attached as **Exhibit 6**.

45. Through the NOE, Swanson alleged that Rushmore committed errors in failing to provide responses to the Appeal in a timely manner, as described, *supra*, and by mishandling the loss mitigation process for the Loan. *See*, Exhibit 6.

46. To date, Swanson has not received a modification of her Loan and remains at imminent risk of a foreclosure sale of her Home, which has been scheduled for a judicial sale through Intercounty Judicial Sales Corporation to take place on Wednesday, August 21, 2024, at 10:00 a.m..

**IMPACT UPON AND DAMAGES SUFFERED BY PLAINTIFF**

47. Rushmore failed to act appropriately in its handling of the loss mitigation process for the Loan after receipt of the Application and in failing to timely respond to requests for information as well as disputes and appeals related to the same.

48. Rushmore's inability to timely review Swanson's eligibility for loss mitigation options and provide Swanson and her counsel with crucial information as to the loss mitigation process of her Loan has disadvantaged Swanson's ability to make crucial decisions related to the foreclosure such as whether to take actions such as filing for bankruptcy protection. Such lack of information has had negative impacts on not only her ability to make such decisions, but also the viability of the options available as accrued interest and other amounts to the Loan may render options such as a viable bankruptcy plan less feasible.

49. Rushmore's improper actions further caused Swanson to suffer from actual damages including, but not limited to:

   a. Accruing arrearages on the Loan including fees and charges imposed on the Loan due to the delays and erroneous conduct related to the loss mitigation process related to the Loan, for which Swanson has become personally obligated or which otherwise may negatively impact any equity in the Home to which Swanson is entitled which would not have been incurred or could have been reduced had Rushmore timely reviewed the Application and properly provided information related to the evaluation of the same to Swanson and her counsel;

   b. Legal fees, costs, and expenses incurred in relation to the Foreclosure which would not have been incurred or could have been reduced had Rushmore timely

reviewed the Application and properly provided information related to the evaluation of the same to Swanson and her counsel; and,

c. Severe emotional distress driven by Rushmore's wrongful conduct related to the delay in the loss mitigation processes and by justified fear that Rushmore's failure to properly handle the loss mitigation processes for the Loan and provide her with timely information would result in the foreclosure sale of her Home which resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PATTERN AND PRACTICE OF DEFENDANT'S VIOLATIONS OF RESPA AND REGULATION X

50. Rushmore's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Rushmore's obligations under the mortgage servicing rules set forth in RESPA and Regulation X.

51. As of the filing of this Complaint, consumers nationwide have lodged at least Seven Thousand Three Hundred Forty-Seven (7,347) consumer complaints with the CFPB against Rushmore related to their servicing of mortgages, specifically as to the topic identified as "loan modification, collection, foreclosure". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at: http://www.consumerfinance.gov/data-research/consumer-complaints/.

52. Plaintiff has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Rushmore engaged in similar conduct against other borrowers. In particular, Plaintiff has reviewed the five (5) consumer complaints attached hereto and identified as **Group Exhibit 7**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Rushmore has

9

engaged in a pattern or practice of violating RESPA and Regulation X with respect to other borrowers.

**COUNT ONE:**
**VIOLATIONS OF RESPA, 12 C.F.R. § 1024.41(c)(1) AND 12 U.S.C. § 2605(k)**

**(Failure to perform a review of Plaintiff's eligibility for any and all loss mitigation options available within thirty (30) days of receipt of a complete loss mitigation application)**

53. Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

54. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

55. 12 C.F.R. § 1024.41(c)(1) provides that if a servicer receives a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then, within thirty (30) days of receiving the complete loss mitigation application, the servicer must: (i) evaluate the borrower for any and all loss mitigation options available to the borrower; and, (ii) provide written notice to the borrower "stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."

56. Rushmore was in possession of a complete loss mitigation application on or before December 3, 2023.

57. As of December 3, 2023, there was no foreclosure sale of the Home scheduled, and there, the Application was submitted more than forty-five (45) days before any foreclosure sale.

58. Pursuant to 12 C.F.R. § 1024.41(c)(1), Rushmore was required, within thirty (30) days of December 3, 2023, at the latest, or by January 2, 2024, to evaluate Swanson for any and

10

all loss mitigation options available to her and provide written notice to them stating its determination of which loss mitigation options, if any, it would offer to Swanson.

59. Rushmore failed to timely evaluate Swanson for all loss mitigation options available to her and send any timely written notice to her detailing its determination of her eligibility for such and did not send such notice until, at the earliest, January 3, 2024, at least thirty-one (31) days after receipt of the complete Application.

60. Rushmore's failure to review Swanson's complete loss mitigation application within thirty (30) days of receipt and send the requisite notice thereafter constitutes a clear violation of 12 C.F.R. § 1024.41(c) and 12 U.S.C. § 2605(k).

61. Rushmore's conduct caused Swanson to suffer actual damages, as discussed, *supra*.

62. Rushmore's conduct is a part of a pattern and practice of behavior in conscious disregard for Swanson's rights and in abdication of Rushmore's obligations under RESPA and Regulation X.

63. As a result of Rushmore's conduct, Rushmore is liable to Swanson for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

64. Additionally, Swanson requests reasonable attorneys fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO:**
**VIOLATION OF 12 C.F.R. § 1024.41(h)(4) AND 12 U.S.C. §§ 2605(k)(1)(C) AND (E)**

**(Failure to Timely Respond to the Appeal)**

65. Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

66. A servicer shall not "fail to take timely action to respond to a borrower's requests

11

to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

67. A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

68. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

69. If a servicer receives a complete loss mitigation application from a borrower at least ninety (90) days prior to a scheduled foreclosure sale, then a servicer shall permit said borrower to appeal a borrower's denial for a loss mitigation option within fourteen (14) days of the Denial. 12 C.F.R. §§ 1024.41(h)(1)-(2).

70. "Within 30 days of a borrower making an appeal, the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option." 12 C.F.R. § 1024.41(h)(4).

71. If there is no foreclosure sale scheduled as of the date a servicer receives a complete loss mitigation application, the application is deemed to have been received more than ninety (90) days prior to any foreclosure sale. Supplement I to Part 1024, Official Interpretation 1 to 1024.41(b)(3).

72. Rushmore was in possession of a complete loss mitigation application on or before December 3, 2024..

73. There was no foreclosure sale of the Home scheduled as of December 3, 2023.

12

74. The Denial stated that Swanson would have "14 calendar days from the date of the [Denial]" to submit an appeal of the denial. *See*, Exhibit 1.

75. Swanson and her counsel did not receive a copy of the Denial until January 13, 2024.

76. Prior to receiving the Denial, a representative of Rushmore spoke with Swanson, *despite being aware that Swanson was represented by counsel*, to inform her verbally of the Denial.

77. On January 16, 2024, Swanson, through counsel, spoke with a representative of Rushmore seeking to extend the appeal deadline in the Denial due to the delay in delivery of the same.

78. Rushmore agreed to extend the deadline for which Swanson to submit her appeal until January 27, 2024.

79. Swanson, through counsel, timely sent the appeal on January 24, 2024, to Rushmore via facsimile transmission to 469.464.0308, via email to Foreclosure Counsel, as well as via Certified Mail to the Designated Address. *See*, Exhibit 2.

80. Rushmore received the Appeal via facsimile transmission on or before January 24, 2024, and via Certified Mail at the Designated Address on or before January 30, 2024.

81. Rushmore was required to respond, in writing, to the Appeal within thirty (30) days of January 30, 2024, at the latest—that is, on or before February 29, 2024—"stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option."

82. Despite being dated February 23, 2024, Rushmore failed to provide the First Appeal Response to either Swanson nor her counsel until *June 4, 2024*. *See*, Exhibits 3 and 6.

83. Rushmore failed to provide a response to the Appeal within thirty (30) days of receipt of the Appeal in violation of 12 C.F.R. § 1024.41(h)(4).

84. Rushmore's actions in violation of 12 C.F.R. § 1024.41(h)(4) caused Swanson to suffer actual damages, further described *supra*, including, but not limited to incurring attorneys' fees and costs associated with the preparation and sending of the NOE, which would not have been necessary but for Rushmore's failure to timely and properly respond to Appeal.

85. Rushmore's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Swanson's rights.

86. As a result of Rushmore's actions, Rushmore is liable to Swanson for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

87. Additionally, Swanson requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE:**
**VIOLATION OF RESPA, 12 C.F.R. § 1024.36 AND 12 U.S.C. § 2605(k)**

88. Swanson restates and incorporates all of the allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

89. RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and more timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

90. "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that

enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

91. "An information request is submitted by a borrower if the information request is submitted by an agent of the borrower." Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a).

92. "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the request for information." 12 C.F.R. § 1024.36(c).

93. A servicer must respond to a request for information by:

(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

94. Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other

15

>> relevant contact information for, the owner or assignee of a mortgage loan; and
>
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

95. The Appeal constitutes a request for information as defined by 12 C.F.R. § 1024.36(a), as it is a written request from Swanson that included her name, mortgage loan account number, and property address and requested information related to the Loan. *See*, Exhibit 2.

96. Swanson, through counsel, submitted the Appeal to Rushmore via facsimile transmission on or about January 24, 2024.. *See*, Exhibit 2.

97. Rushmore received the Appeal at its designated address on or before January 30, 2024. *See*, Exhibit 2.

98. Despite being dated March 20, 2024, Rushmore failed to provide the Second Appeal Response in response to the information requests contained in the Appeal to either Swanson or her counsel until *May 17, 2024*. *See*, Exhibits 4 and 6.

99. Rushmore did not fulfill its obligations as to 12 C.F.R. § 1024.36(d)(1) as Rushmore did not timely provide the information requested through the Appeal.

100. Rushmore's actions constitute violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E).

101. Rushmore's conduct directly and proximately caused Swanson to suffer actual damages in the form of, *inter alia*, attorneys' fees and costs associated with the drafting, preparing, and mailing of the NOE. *See* 12 U.S.C. § 2605(f)(1); ¶¶ 44-45, *supra*; Exhibit 6.

102. Further, Rushmore's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) caused Swanson's attorneys' fees and costs associated with the preparation of the RFI to metamorphose into damages. *Marais v. Chase Home Fin., LLC (Marais II)*, 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC (Marais I)*, 736 F.3d 711, 721 (6th Cir. 2013).

103. Additionally, Swanson requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## COUNT FOUR:
## VIOLATIONS OF THE ICFA, 815 ILCS 505/1, *ET SEQ.*

104. Swanson restates and incorporates all of the allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

105. 815 ILCS 505/2 states, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

106. "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

107. ICFA allows for an award of punitive damages for actions that are either fraudulent, willful, or grossly negligent as to indicate a wanton disregard of the rights of others. *See Martin v. Heinold Commodities*, 643 N.E.2d 734, 756-757 (Ill. 1994).

108. Rushmore's conduct, as detailed, *supra*, constitutes unfair conduct under ICFA. Rushmore violated the ICFA by engaging in unfair or deceptive acts or practices by failing to timely review the Application and by failing to timely respond to the Appeal.

109. Rushmore's conduct occurred during the course of trade or commerce.

110. Rushmore, through its conduct, intended that Swanson would rely on its unfair or deceptive acts or practices.

111. Rushmore's unfair or deceptive acts or practices were immoral, unethical, unscrupulous and oppressive, especially in that Rushmore was, at all times relevant, in a position of strength in relation to Swanson.

112. Rushmore owed Swanson a duty of good faith and fair dealing. Rushmore owed Swanson a fiduciary duty as servicer. Rushmore had discretion with respect to its servicing of the Loan.

113. Rushmore's conduct violates public policy, including RESPA, because, as detailed, *supra*, Rushmore used unfair or deceptive acts or practices in connection with its servicing of the Loan.

114. Rushmore's conduct has directly and proximately caused Swanson to suffer actual damages in the form of, *inter alia*, legal fees further defense of the Foreclosure, attorneys' fees and costs associated with the drafting, preparation of, and mailing of the NOE, and further damages described, *supra*.

115. Additionally, Swanson requests reasonable attorneys' fees and costs incurred in filing and maintaining this action.

116. Rushmore's conduct in continuously failing or refusing to provide requested and mandatory written information to Swanson and in otherwise failing to properly handle the loss

18

mitigation process for her Loan, shows a pattern of conduct that is at least grossly negligent. Swanson seeks punitive damages for Rushmore's fraudulent, willful, or grossly negligent conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Belinda T. Swanson prays that this Court grant judgment against Defendant Nationstar Mortgage LLC d/b/a Rushmore Servicing and award her the following:

A. Actual damages from Defendant Nationstar Mortgage LLC d/b/a Rushmore Servicing in an amount to be determined at trial for the allegations contained in Counts One through Four;

B. An award of statutory damages from Defendant Nationstar Mortgage LLC d/b/a Rushmore Servicing in the amount of Two Thousand Dollars ($2,000.00) for each of its violations of RESPA contained in Counts One through Three for a total of Six Thousand Dollars ($6,000.00);

C. For punitive damages as to Count Four;

D. For her attorneys fees and costs as to Counts One through Four; and,

E. For such other relief which this Court may deem appropriate.

**JURY DEMAND**

Plaintiff Belinda T. Swanson hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann, Esq. (OH Bar No. 0039425)
**DANN LAW**
15000 Madison Avenue
Lakewood, Ohio 44107
Phone: 216-373-0539
Fax: 216-373-0536
mdann@dannlaw.com
notices@dannlaw.com

Stephen T. Saporta (IL Bar No. 6195248)
1256 W. Jefferson Street, Suite 202
Joliet, IL 60435
(815) 741-9400
E-Mail: WillCountyLawyer@aol.com

*Counsel for Plaintiff Belinda T. Swanson*